*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. WALTERS, Minor.

FOR PUBLICATION
January 02, 2025
12:51 PM

No. 369318
Calhoun Circuit Court
Family Division
LC No. 2023-002237-NA

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

MALDONADO, J.

It is well-established that parents have a fundamental right to the care, custody, and control of their children. Therefore, the Legislature has enacted a statutory scheme that elevates reunification of parents and children over termination of parental rights. To that end, the Department of Health and Human Services (DHHS) must make reasonable efforts toward family reunification before seeking termination. MCL 712A.19a(2) contains an exclusive list[1] of the exceptions to DHHS's duty to make reasonable efforts toward reunification. Under no circumstances may a trial court terminate a parent's rights without first finding that one of these exceptions applies. MCR 3.977(E) lays out the procedure that courts must follow in order to terminate parental rights at the initial disposition pursuant to MCL 712A.19a(2).

In this case, respondent appeals by right the trial court's order terminating her parental rights to the minor child, CW,[2] pursuant to MCL 712A.19b(3)(a)(*ii*) (desertion) and (j) (reasonable

---

[1] MCL 712A.19a(2)(a) contains a cross-reference to MCL 722.638, which provides circumstances under which DHHS must seek termination at the initial disposition. Because MCL 722.638 is incorporated by reference into MCL 712A.19a(2)(b)'s list, it is accurate to describe this list as exclusive. As discussed in greater detail later, when termination at the initial disposition is sought pursuant to MCL 722.638 it is also implicitly sought pursuant to MCL 712A.19a(2)(a).

[2] In 2012, respondent gave birth to a son, SD. However, SD is in the sole custody of his father, and only respondent's parental rights to CW are at issue in this appeal.

-1-

likelihood of harm if returned to the parents). DHHS sought and obtained termination of respondent's parental rights at the initial disposition despite failing to even allege the existence of an exception to its duty to provide reasonable efforts toward reunification. Additionally, DHHS violated respondent's right to due process of law by basing termination of respondent's parental rights on her alleged failure to comply with an oral safety plan that was implemented before the court took jurisdiction. Therefore, we reverse.

## I. BACKGROUND

Respondent, who has struggled for many years with a substance abuse disorder, gave birth to CW in May 2023, while she was receiving inpatient treatment at a substance abuse rehabilitation facility. Child Protective Services (CPS) was notified that CW testified positive for illegal substances, and it purportedly established an oral safety plan without filing a petition for jurisdiction. Pursuant to this safety plan, respondent was not to use substances in CW's presence, and CW was to be left with a sober caregiver if respondent did use; respondent was never bound to comply with this safety plan by a court order. When CW was discharged from the hospital, she and respondent lived with respondent's mother. At this point, the case was transferred from Macomb County to Calhoun County. The CPS worker in Calhoun county purportedly updated the safety plan such that CW could not ever be left unsupervised with respondent; once again, the safety plan was not binding because a court was not involved.

CW lived with respondent and respondent's mother, Price, until a CPS visit in August 2023; no court had jurisdiction over CW at any point between her birth and the August visit. During this visit, respondent reported that she was still abusing substances on a regular basis and that CW was regularly being left in respondent's care without supervision; there is no evidence that respondent used substances while solely caring for CW or that CW was not appropriately cared for while respondent's mother was at work. Indeed, DHHS's notes indicate that CW was doing well and that her needs were being met. Respondent's mother later testified that she left CW with respondent because she had no choice but to go to work, and could not afford childcare. Only then did DHHS file a petition in this matter, seeking termination at the initial disposition and placing CW in a preadoptive foster placement. The petition did not explain why it was requesting to terminate respondent's parental rights without making reasonable efforts toward reunification.

On the same day, the court entered an ex parte order allowing CPS to remove CW from respondent's care. The court authorized the petition at the September 5, 2023 preliminary hearing, after which it held an adjudication bench trial over two days in November 2023. At the conclusion of the trial, the court took jurisdiction over CW pursuant to MCL 712A.2(b)(1) (failure to provide proper care or custody) and (2) (unfit home environment). Following a three-day dispositional hearing, the court terminated respondent's parental rights. This appeal followed.

## II. TERMINATION AT INITIAL DISPOSITION

The trial court erred by terminating respondent's parental rights at the initial disposition instead of ordering reasonable efforts toward reunification. We acknowledge that this issue was not raised by either party. However, it is well established that "this Court possesses the discretion to review a legal issue not raised by the parties." *Tingley v Kortz*, 262 Mich App 583, 588; 688

NW2d 291 (2004). Accordingly, we exercised our discretion to review this issue and directed the parties to submit supplemental briefs to aid with this review.[3]

The interpretation and application of statutes and court rules are reviewed de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). This Court's "primary task in construing a statute, is to discern and give effect to the intent of the Legislature." *In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019). "The words used by the Legislature in writing a statute provide us with the most reliable evidence of the Legislature's intent." *Drew v Cass County*, 299 Mich App 495, 499; 830 NW2d 832 (2013).

> If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [*Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 418-419; 925 NW2d 897 (2018) (quotation marks and citation omitted).]

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal . . . ." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). However, reasonable efforts toward reunification are not necessary if any of the following circumstances are present:

> (a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.

> (b) The parent has been convicted of 1 or more of the following:

> (*i*) Murder of another child of the parent.

> (*ii*) Voluntary manslaughter of another child of the parent.

> (*iii*) Aiding or abetting in the murder of another child of the parent or voluntary manslaughter of another child of the parent, the attempted murder of the child or another child of the parent, or the conspiracy or solicitation to commit the murder of the child or another child of the parent.

> (*iv*) A felony assault that results in serious bodily injury to the child or another child of the parent.

---

[3] *In re C Walters Minor*, unpublished order of the Court of Appeals, entered September 17, 2024 (Docket No. 369318).

(c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights.

(d) The parent is required by court order to register under the sex offenders registration act. [MCL 712A.19a(2).]

It is clear from the record that none of the exceptions to DHHS's duty to provide reasonable efforts toward reunification apply. Indeed, DHHS did not even cite this provision in its petition seeking termination at the initial disposition. The termination order likewise does not cite this statute, instead erroneously indicating that reasonable efforts toward reunification took place. The court failed to acknowledge the presence of this added duty when terminating parental rights at the initial disposition and thus did not make any of the requisite findings; regardless, any such finding could not have been supported by the evidence. Regarding Subdivision (a), no such judicial determination took place. Moreover, there is no evidence that respondent abused CW or a sibling of CW MCL 722.638(1)(a),[4] and respondent's parental rights to another child were never terminated, MCL 722.638(1)(b). Regarding Subdivision (b), respondent's sole criminal conviction was a misdemeanor for larceny. Regarding Subdivision (c), respondent's parental rights to another child were never terminated. It is true that respondent has a CPS history involving another child to whom she gave birth in 2012. However, while respondent has little contact with this child, who lives with his father, her parental rights were never terminated. Regarding Subdivision (d), respondent is not a sex offender.

In its supplemental brief, DHHS concedes that none of these exceptions apply. However, DHHS tries to sidestep the statutory requirement to attempt reunification by using MCR 3.977(E) to limit MCL 712A.19a(2)'s applicability. MCR 3.977(E) provides:

Termination of Parental Rights at the Initial Disposition. The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if

(1) the original, or amended, petition contains a request for termination;

(2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

(3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea

---

[4] There were references to "physical abuse" in the petition, but these were in regard to respondent's children testing positive for substances and experiencing withdrawals at birth. Drug use during pregnancy does not constitute physical abuse "under any circumstances because a fetus is not a 'child' under the Probate Code." *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022) (citation omitted).

proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

(b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);

(4) termination of parental rights is in the child's best interests.

DHHS argues that the aggravating factors in MCL 712A.19a(2) "only become a factor in the question of offering reasonable efforts towards reunification pending termination." In other words, DHHS suggests that it does not need to establish an aggravating factor to seek termination at initial disposition; rather, it needs to establish an aggravating factor to avoid offering reunification services during the interim period after the petition is filed and before parental rights are terminated. DHHS argues that MCL 712A.19a(2) did not apply in this case because it offered services while it awaited a decision on its request for termination. In essence, DHHS argues that MCL 712A.19a(2) is optional, and it can avoid its protections by continuing to offer services while it awaits the initial disposition.

We disagree with DHHS's attempt to justify a narrow reading of MCL 712A.19a(2) by using a broad reading of MCR 3.977(E). At the outset, DHHS offers no caselaw nor statutes supporting its position, instead relying entirely on the court rule. Furthermore, this argument is facially illogical. It is difficult to understand how DHHS could be making "reasonable efforts *to reunite the child and family*" while its goal is termination. MCL 712A.19a(2) (emphasis added). Offering services and visitation while termination is pending is not enough. The statute unambiguously provides that the efforts being made must be aimed at reunification, and this is impossible if the agency that is offering the services is actively working to terminate parental rights. Moreover, DHHS's position is contrary to the intent of the Legislative scheme. The statutory framework mandates provision of services, preparation of a case service plan, and periodic dispositional reviews; this evidences the Legislature's position that reunification is the preferred outcome over termination. See *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022) (*Simonetta III*) ("The Legislature has expressed an unmistakable preference that . . . DHHS offer services to every parent at risk of losing parental rights.") MCL 712A.19a(2) is designed to protect the right of parents and children to have a meaningful chance at reunification unless there are extreme circumstances. DHHS's interpretation of MCR 3.977(E) would nullify these protections as long as DHHS continues to offer services while it waits for the court to grant its request for termination.

By no means do we suggest that there is any tension between MCL 712A.19a(2) and MCR 3.977(E). Rather, these provisions can and should be read together. The statute provides the circumstances under which termination may be granted at the initial disposition, and the court rule lays out the procedure that must be followed to grant termination at the initial disposition. MCR 3.977(E)(3)(b) does specify the grounds under which termination at the initial disposition may be granted. However, the only ground that is omitted—MCL 712A.19b(3)(c)—requires a finding that "182 or more days have elapsed since the issuance of an initial dispositional order," so this particular ground could never support termination at the initial disposition irrespective of whether

aggravating circumstances are present. Nothing in the court rule suggests that termination may be granted at the initial disposition without the presence of an aggravating circumstance.

Our conclusion necessarily follows from the Supreme Court's decision in *Simonetta*. The respondent in *Simonetta* argued in this Court that DHHS violated MCL 712A.19ba(2) by failing to make reasonable efforts toward reunification. *In re Simonetta Minor*, unpublished per curiam opinion of the Court of Appeals, issued February 18, 2021 (Docket No. 354081) (*Simonetta I*), p 2. This Court concluded that, because MCL 722.638(2) mandated DHHS to request termination and because DHHS complied with MCR 3.997(E), it was not required to make reasonable efforts toward reunification. *Id*. at 4-5. The Supreme Court reversed, reasoning that "[r]easonable efforts to reunify the child and family must be made in all cases except those involving the circumstances delineated in MCL 712A.19a(2)" and that the circumstances must be established by clear and convincing evidence. *In re Simonetta*, 507 Mich 943; 959 NW2d 170 (2021) (*Simonetta II*). There is no indication that the Supreme Court's order was in any way based on the three-and-a-half-month period between DHHS filing the petition and the court terminating the respondent's parental rights. Accordingly, *Simonetta II* defeats DHHS's argument that MCL 712A.19a(2) only applies during the period between requesting termination and obtaining termination.

When *Simonetta* returned to this Court, it appeared understood that termination at the initial disposition was improper absent a finding that an exception applied. See *Simonetta III*. This Court described the MCL 712A.19a(2) as a list of "[a]ggravated circumstances justifying a petition seeking termination of parental rights at initial disposition . . . ." *Simonetta III*, 340 Mich at 708-709. This Court has also expressed agreement with our conclusion in unpublished opinions.[5] For example, in *In re Casper/Washington Minors*, unpublished per curiam opinion of the Court of Appeals, issued June 9, 2022 (Docket No. 359270), pp 4-5, this Court stated that the trial court "could not terminate respondent's parental rights to the children at the initial disposition unless it determined that one of the exceptions stated under MCL 712A.19a(2) applied." Additionally, in *In re Warblow Minors*, unpublished per curiam opinion of the Court of Appeals, issued March 2, 2023 (Docket No. 360948), p 2, the respondent argued that "the trial court erred by terminating his parental rights at initial disposition without first finding that aggravated circumstances or reasonable efforts to reunify the family had occurred . . . ." This Court, citing the Supreme Court's order in *Simonetta*, held that the trial court erred by failing to "engage in any meaningful analysis or articulate a factual finding that aggravated circumstances existed." *Id*. at 4.

Our conclusion is also consistent with this Court's recent published opinion in *In re Barber/Espinoza Minors*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 369359). In that case, DHHS sought and obtained termination at the initial disposition pursuant to MCL 722.638. *Id*. at ___; slip op at 3. While this Court did not cite the exceptions found in MCL 712A.19a(2), reliance on MCL 722.638 to terminate at the initial disposition necessarily invokes MCL 712A.19a(2)(a).[6] After a thorough analysis of the conduct at issue in that case, this Court

---

[5] Unpublished opinions of this Court are not binding, but may be considered for their persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

[6] MCL 712A.19a(2)(a) allows termination at the initial disposition if "the parent has subjected the child to aggravated circumstances as provided in . . . MCL 722.638."

concluded that the trial court erred by finding that DHHS established one of the aggravated circumstances delineated in MCL 722.638. *Id*. at ___; slip op at 3-8. Accordingly, the trial court's order terminating the respondent's parental rights was reversed. *Id*. at ___; slip op at 10. Put differently, the termination at the initial disposition was reversed because the trial court erred by finding that an exception was established. This necessarily implies that establishing an exception to the duty to provide reunification services is a mandatory prerequisite to termination at the initial disposition.

Finally, this error warrants reversal despite being unpreserved. "In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Neither party raised and the trial court did not address the issue of whether DHHS established an exception to its responsibility to attempt reunification. Therefore, this issue is unpreserved. See *id*. Unpreserved issues in termination of parental right cases are reviewed for plain error affecting substantial rights. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). This standard requires a respondent to "establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights. And the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings." *Ferranti*, 504 Mich at 29; (quotation marks, citations, and alterations omitted).

Application of the plain error rule in this context was discussed at length in *Barber/Espinoza*. "A 'clear or obvious' error is one that is not subject to reasonable dispute." *Id*. at ___; slip op at 8. In *Barber/Espinoza*, this Court concluded that because its "interpretation of MCL 722.638 is clearly provided by the statute's plain language and supported by a recent case from this Court, this is not an issue subject to a reasonable dispute." *Id*. We likewise conclude that our interpretation of MCL 712A.19a(2) "is clearly provided by the statute's plain language . . . ." *Id*. Moreover, our interpretation is supported by multiple recent cases, including *Simonetta II*, *Simonetta III*, *Barber/Espinoza*, *Casper/Washington*, and *Warblow*. Therefore, "this is not an issue subject to a reasonable dispute." *Id*. Regarding prejudice, this Court concluded in *Barber/Espinoza*

> that the trial court's error prejudiced [the respondent] because (1) it is unclear how an aggrieved respondent could establish outcome-determinative error concerning the denial of reunification services altogether and (2) the error improperly dispensed with a critical aspect of a child protective proceeding—the requirement to offer reunification services before terminating parental rights—affected the very framework within which this case progressed, undermined the foundation of the rest of the proceedings, and impaired respondent's fundamental right to direct the care, custody, and control over her children. [*Id*. at ___; slip op at 9.]

This analysis of the plain error rule's third prong applies equally to any case in which a court erroneously terminates a parent's rights in the absence of aggravating circumstances. Finally, similar to *Barber/Espinoza*, we conclude that the fairness and integrity of the proceeding was seriously affected by the damage done to the framework in which the case progressed. See *id*. at ___; slip op at 10. Because DHHS did not establish the requisite aggravating factors, the trial court erred by terminating respondent's parental rights at the initial disposition.

## III. DUE PROCESS

The trial court additionally erred by depriving respondent of her fundamental right to the care and custody of CW without adequate notice of what was expected of her in violation of her constitutional right to due process. This issue was likewise not raised by respondent's attorney, but we again exercise our discretion to consider it. *Kortz*, 262 Mich App at 588.

"Due process requires fundamental fairness . . . ." *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993). It is well-established that a tenet of due process is that parties be given adequate notice of what they must do to avoid deprivation of fundamental rights. See *Dep't of State Compliance and Rules Div v Mich Ed Ass'n-NEA*, 251 Mich App 116-117; 650 NW2d 120 (2002) (discussing notice requirement in the context of void-for-vagueness doctrine). To that end, DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re MJC Minor*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 3 (quotation marks and citation omitted). Pursuant to MCL 712A.18f(1) and (2), the case service plan must be in writing, and it must "be available to the court and all the parties to the proceeding." The case service plan is presented to the court prior to an order of disposition, and it then "may order compliance with all or any part of the case service plan as the court considers necessary." MCL 712A.18f(4).

In this case, DHHS did not fulfill its obligation to obtain court jurisdiction and implement a formal, written, court-approved service plan. Instead, it proceeded without obtaining jurisdiction despite CW having tested positive for illegal substances at birth. It then unilaterally implemented an oral "safety plan," which was essentially a case service plan with a different name, that was never approved by or submitted to a court. Because the safety plan was never presented to a court, respondent was never obligated to comply with it. Nevertheless, DHHS sought termination at the initial disposition largely for respondent's failure to comply with this safety plan despite a lack of evidence that CW's needs were not being met. Further, DHHS sought termination despite failing to offer respondent's mother any support to enable her to go to work without leaving CW with respondent, as they requested. No written plans were prepared until after DHHS filed a petition seeking termination of respondent's parental rights, and as noted, this petition was largely based on respondent's lack of compliance with the safety plans.

The impact on the lack of notice in this case is evident from the record. Indeed, DHHS's notes from early in the case indicate that CW was permitted to be in respondent's care when respondent was sober, and there is no record of when this nonbinding safety plan was changed such that respondent could not be alone with CW at all. The record suggests that respondent was understandably stunned when CW was taken because she believed that she had been complying with DHHS's wishes. The problems arising in this case as a result of the reliance on this informal, unwritten "safety plan" perfectly illustrate the importance of preparing a written service plan that is given to the parties and placed in the record. The record regarding the oral safety plan is particularly blurry in this case given that the testimony of the Macomb County CPS worker was so erratic that the guardian ad litem described it as "quite possibly some of the worst worker testimony I've ever sat through," continuing that it was "extremely difficult to unwind" and concluding that she "can't make heads or tails of it."

In sum, the termination of respondent's parental rights was based largely on her failure to completely comply with a malleable oral safety plan, the details of which remain unclear, despite the fact that CW was kept safe and well cared for. This failure to properly notify respondent of what was required in order to preserve her parental rights deprived respondent of the "fundamental fairness" required for due process. *Brock*, 442 Mich at 111. However, this issue is likewise unpreserved and therefore is also subject to plain error review. *TK*, 306 Mich App at 703; *Utrera*, 281 Mich App at 8. The second prong of the plain error test is satisfied because it cannot be reasonably disputed that it is an error to terminate someone's parental rights on the basis of her failure to comply with an oral safety plan that was implemented before a court took jurisdiction. See *Barber/Espinoza*, ___ Mich App at ___; slip op at 8. Regarding the third prong, the error affected the outcome of the proceedings because the termination of respondent's parental rights flowed directly from the violation of her due process rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Finally, depriving respondent of her fundamental right to the care and custody of her child through a fundamentally unfair procedure is harmful to fairness and integrity of judicial proceedings. See *id*.

Therefore, the deprivation of respondent's right to due process provides a separate basis to reverse the termination of her parental rights.

## III. CONCLUSION

DHHS and the trial court did not provide reasonable efforts toward reunification of respondent and CW. They also did not provide respondent with adequate notice of what was required of her. Therefore, the court's order terminating respondent's parental rights is reversed. This case is remanded for additional proceedings. On remand, DHHS shall prepare a case service plan, and the trial court shall order that reasonable efforts be made toward reunification. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michelle M. Rick